UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

Case No. 15-cr-20396

v.

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

DESHAWN BROWN,

UNITED STATES MAGISTRATE JUDGE
ANTHONY P. PATTI

Defendant.

_____/

## OPINION AND ORDER ON SENTENCING

### I. INTRODUCTION

Deshawn Brown ("Defendant") argues that under *Johnson v. United States*, 559 U.S. 133 (2010) ("*Johnson I*") and *Johnson v. United States*, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) ("*Johnson II*"), his 2006 conviction for Resisting/Obstructing an Officer Causing Injury, MICH. COMP. LAWS § 750.81d(2), should not qualify as a "crime of violence" and result in an increase in his sentencing level for the present offense of Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1). As there does not appear to be any cases directly on point, this Court is faced with an issue growing out of *Johnson II*.

-1-

## II. BACKGROUND

Defendant is a 27 year old Jackson, Michigan resident pleading guilty to one count of Felon in Possession of a Firearm, 18 U.S.C. § 922(g)(1). Ten years ago, at the age of 17, Defendant pleaded guilty to other charges, including Resisting/Obstructing an Officer Causing Injury, MICH. COMP. LAWS § 750.81d(2).

Defendant and his fiancée have been in a relationship since high school and have four children, all under the age of ten. Defendant has been employed in a full-time position with American Tooling Center in Grass Lake Township for just over five months and was previously a stay-at-home caretaker for his children while his fiancée worked full-time. Additionally, Defendant has recently completed a welding class at Jackson Community College and has set a goal to obtain his General Equivalency Diploma (GED). Although Defendant initially tested positive for marijuana while on bond, he has tested negatively for nine months, despite suffering from an addiction to marijuana and dealing with severe depression since he was in elementary school. He has otherwise complied with his bond conditions by maintaining employment and reporting as directed.

Defendant's current charges arise from when the police encountered Defendant with two firearms in his vehicle on May 6, 2015. Both firearms were loaded, and one was in the front seat next to Defendant as he drove through a residential neighborhood. It was later determined that one of the firearms was

reported as stolen. As Defendant was previously convicted of a felony, he could not lawfully possess a firearm.

### III. LEGAL STANDARD

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range" as "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Nevertheless, the district court should "not presume that the Guidelines range is reasonable," and instead should consider all of the § 3553(a) factors. *Id.* at 49–50; *see also United States v. Kamper*, 748 F.3d 728, 739 (6th Cir.), *cert. denied*, 135 S. Ct. 882 (2014) ("Although the district court need not explicitly discuss each § 3553(a) factor, the statement of reasons must demonstrate that the district court at least considered each factor when determining the appropriate sentence."). This assessment is individualized to the defendant, based on the facts presented. *Gall*, 552 U.S. at 50.

If the district court determines that a sentence outside of the guidelines is warranted, it "must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance." *Id.* The chosen sentence must be adequately explained to allow for meaningful appellate review and the perception of fair sentencing. *Id.*

Section 3553(a) of the Sentencing Guidelines requires that the Court "impose a sentence sufficient, but not greater than necessary, to comply with the

purposes set forth in paragraph (2) of this subsection." The section lists seven factors for the Court to consider. First, the Court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). Second, the Court should consider the need for the sentence imposed to:

(a)   reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b)   afford adequate deterrence to criminal conduct;

(c)   protect the public from further crimes of the defendant; and

(d)   provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Next, the Court is directed to consider the kinds of sentences available and the sentencing range established for the category of offense and defendant. 18 U.S.C. § 3553(a)(3–4). Finally, the Court is to consider any pertinent policy statement issued by the Sentencing Commission, "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," and whether restitution is needed for any victims of the offense. 18 U.S.C. § 3553 (5–7).

## IV. DISCUSSION

Defendant pleaded guilty to, and is being sentenced for, a violation of 18 U.S.C. § 922(g)(1), Felon in Possession of a Firearm. The maximum sentence for this offense is ten years (120 months) imprisonment. *See* 18 U.S.C. § 924(a)(2)

("Whoever knowingly violates subsection (a)(6), (d), (g), (h), (i), (j), or (o) of section 922 shall be fined as provided in this title, imprisoned not more than 10 years, or both."). There is no statutory minimum sentence for this offense.

Felon in Possession of a Firearm is a Class C felony. *See* 18 U.S.C. § 3559(a)(3) ("An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is . . . less than twenty-five years but ten or more years, as a Class C felony."). The maximum term of supervised release for a Class C felony is three years. *See* 18 U.S.C. § 3583(b)(2). Additionally, the Sentencing Guidelines provide that a Class C felony corresponds with a term of supervised release that is at least one year. *See* U.S.S.G. § 5D1.2(a)(2) ("Except as provided in subsections (b) and (c), if a term of supervised release is ordered, the length of the term shall be . . . [a]t least one year but not more than three years for a defendant convicted of a Class C or D felony."). Accordingly, the length of Defendant's term of supervised release should be between one and three years.

The present dispute hinges upon whether Defendant's 2006 conviction for Resisting/Obstructing an Officer Causing Injury constitutes a "crime of violence" under the Federal Sentencing Guidelines. Section 4B1.2(a) specifically defines the term "crime of violence," as any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that:

(1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(2) is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

"In making this determination, "the offense of conviction (i.e., the conduct of which the defendant was convicted) is the focus of inquiry." *United States v. Bartee*, 529 F.3d 357, 359 (6th Cir. 2008); U.S.S.G. § 4B1.2, comment n.2.

The Court utilizes the "categorical approach" to determine whether a prior conviction constitutes a "crime of violence" under U.S.S.G. § 4B1.2(a). *See id*. The formal categorical approach looks only to the statutory definitions of prior offenses, and not to the particular facts underlying those convictions. *Taylor v. United States*, 495 U.S. 575, 600 (1990). In this approach, the Court compares elements of the statute forming the basis of Defendant's conviction with elements of the offense as it is commonly understood—i.e., the "generic" crime. *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013). The prior conviction will qualify as a predicate offense only if the statute's elements are the same as, or narrower than, those of the generic crime.[1] *United States v. Ozier*, 796 F.3d 597, 599-600 (6th Cir. 2015).

---

[1] Because a "crime of violence" under the career-offender guidelines is analyzed in the same way as a "violent felony" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), the Court may rely on ACCA cases. *United States v. Denson*, 728 F.3d 603, 607 (6th Cir. 2013).

A variant of the categorical approach is known as the "modified categorical approach," and is applied when "the statute of conviction as a whole does not categorically qualify as a crime of violence," such that the statute is comprised of multiple, alternative versions of the crime. *See Descamps*, 133 S.Ct. at 2281, 2284. Under the modified categorical approach, the Court may "consult a limited class of documents," including "the terms of a plea agreement or transcript of colloquy between judge and defendant" as permitted under *Shepard v. United States*, 544 U.S. 13 (2005). *Id.* (noting that the review was not to determine the factual basis of the plea agreement, but only whether the plea was to the version of the crime in the statute corresponding to the generic offense). Nevertheless, the Court is not to apply the modified categorical approach, and review the limited class of documents, where the crime of which Defendant was convicted has a single, indivisible set of elements. *Id.* at 2283.

Defendant pleaded guilty in 2006 to violating Michigan Compiled Laws § 750.81d(2). The statute states that:

> An individual who assaults, batters, wounds, resists, obstructs, opposes, or endangers a person who the individual knows or has reason to know is performing his or her duties causing a bodily injury requiring medical attention or medical care to that person is guilty of a felony punishable by imprisonment for not more than 4 years or a fine of not more than $5,000.00, or both.

*Id.* The elements of the offense are that "(1) the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered a police officer"; "(2) the

defendant knew or had reason to know that the person that the defendant assaulted, battered, wounded, resisted, obstructed, opposed, or endangered was a police officer performing his or her duties"; and (3) "that defendant's actions caused the police officer an injury requiring medical treatment." *People v. Muska-Smith*, No. 312640, 2013 WL 6182637, at *2 (Mich. Ct. App. Nov. 26, 2013). Thus, that Defendant caused the police officer to be injured is an element of the offense.

The Government argues that this offense qualifies as a crime of violence under both the first prong of § 4B1.2(a), a crime involving the "use of physical force against the person of another," and the second prong's residual clause, a crime involving "conduct that presents a serious potential risk of physical injury to another." *See also United States v. Alexander*, 543 F.3d 819, 823 (6th Cir. 2008) (determining, prior to *Johnson I* and *Johnson II* that a violation of MICH. COMP. LAWS § 750.81d(2) was a crime of violence). However, with respect to the residual clause in the second prong, "the Supreme Court held the identically worded residual clause of the [ACCA] . . . to be unconstitutionally vague."[2] *See United*

---

[2] The Sixth Circuit has held that the residual clause of the career offender Sentencing Guideline is unconstitutionally vague in violation of Fifth Amendment due process. *United States v. Pawlak*, No. 15-3566, 2016 WL 2802723 (6th Cir. May 13, 2016). *See also United States v. Harbin,* No. 14–3956/3964, 610 Fed. App'x. 562, 2015 WL 4393889 (6th Cir. July 20, 2015) (vacating judgment and remanding for reconsideration in light of *Johnson* in a case involving a "crime of violence" conviction based solely upon the residual clause under U.S.S.G. § 4B1.2(a)(2)); *United States v. Darden,* 605 Fed. App'x. 545 (6th Cir. 2015) (same).

-8-

*States v. Alexander*, No. 15-3088, 2016 WL 640489, at \*3 (6th Cir. Feb. 18, 2016) (citing *Johnson II,* 135 S.Ct. at 2551).

Using the categorical approach, the Court must look to whether the predicate offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Denson*, 728 F.3d at 608 (quoting U.S.S.G. § 4B1.2(a)(1)). This inquiry "focuses on the statutory definition of the offense, rather than the manner in which an offender may have violated the statute in a particular circumstance." *Id*. at 607. The statute of Defendant's 2006 conviction defines "obstruct" as "the use or threatened use of physical interference or force *or a knowing failure to comply with a lawful command*." MICH. COMP. LAWS § 750.81d(7)(a) (emphasis added). Thus, according to the statute's own definition, an individual can violate the statute without the use of physical force, so long as the injury to an officer was caused by that individual's knowing failure to comply with a lawful command. *Cf. United States v. Mosley*, 575 F.3d 603, 605 (6th Cir. 2009) (finding that an individual could "obstruct" an officer without attempting or threatening to use force based on the definition in § 750.81d(7)(a), in a case involving a violation of § 750.81d(1)).

The divisibility between the elements, only some of which involve physical force,[3] allows the Court to employ the "modified categorical approach" to determine which element of the statute led to Defendant's prior conviction. *See Alexander*, 2016 WL 640489, at *3 (citing *Descamps*, 133 S.Ct. at 2281). Accordingly, the Court will consider the transcript of Defendant's plea colloquy. *See* Dkt. No. 20-2; *Johnson I*, 559 U.S. at 144 (explaining that transcripts of plea colloquies under the modified categorical approach).

On November 3, 2006, Defendant pleaded guilty to "resisting and obstructing causing injury to an officer," pursuant to Michigan Compiled Laws

---

[3] In *United States v. Castleman*, 134 S. Ct. 1405 (2014), the Supreme Court analyzed whether a Tennessee misdemeanor domestic violence conviction necessarily involved the use of physical force. The Court held that since Castleman pleaded guilty to "intentionally or knowingly caus[ing] bodily injury" to the mother of his child, this offense did necessarily involve physical force. *Id*. at 1414–15. Even though a conviction was possible under the statute without making contact—e.g. deceiving someone into drinking a poisoned beverage—the common law concept of force encompassed its indirect application, since force need not be applied directly to the body of the victim. *Id*. at 1414 ("It is impossible to cause bodily injury without applying force in the common-law sense."). Additionally, since the conduct in *Castleman* was admittedly knowing or intentional, that application of force constituted a "use" of force. *Id*. at 1415 (noting that *Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) held that the "use" of force must entail "a higher degree of intent than negligent or merely accidental conduct."). The present case is distinguishable. Under Michigan Compiled Laws § 750.81d(2), an individual's "knowing failure to comply with a lawful command" could be the proximate cause of an officer's bodily injury due to mere accident. For instance, an officer could be injured during a foot chase of a fleeing suspect who knowingly failed to comply with the officer's order to stop. Such an injury would be caused by the suspect's failure to comply with a lawful order, and may require medical attention, but it seems to lack a high enough degree of intent to qualify as a "use of force."

§ 750.81d(2). Dkt. No. 20-2, pp. 3, 7 (Pg. ID No. 77, 81). According to the factual basis for the plea, Defendant was stopped by an officer and took off running. *Id*. at 15–16. At some point during the chase, Defendant stopped and the officer "dove over" Defendant's back, scraping his face on the pavement and requiring medical care for a bloody nose. *Id*. at 17–18. Such alleged facts are consistent with the sentencing judge's acceptance of Defendant's guilty plea for "resisting and obstructing causing injury to an officer." Dkt. No. 19. There is no indication that use of physical force was an element leading to Defendant's conviction. Thus, the Court finds that Defendant's conviction seems to be premised on his knowing failure to comply with and resisting the officer's lawful command to stop, which resulted in injury to the officer.

If Defendant's offense level is not increased by a conviction for a "crime of violence," his offense level would be 13 instead of 19, and would result in a sentence range of 18–24 months, instead of 37–46 months.[4] The minimum term of supervised release remains the same, at one year.

The § 3553 factors seem to weigh in favor of a sentence towards the lower end of that range. Defendant is a near-lifelong resident of the Jackson, Michigan

---

[4] *See* Dkt. No. 19, p. 6 n.1 (Pg. ID No. 55) ("The government arrives at this number by taking a base offense level of 14, adding 2 points for possession of a stolen firearm, and then subtracting 3 points for acceptance of responsibility. At criminal history category III, this would result in a range of 18–24 months."); Dkt. No. 20, p. 3 (Pg. ID No. 65) ("Counsel . . . believes the correct scoring would reflect a range of 18–24 months").

-11-

area, has accepted responsibility for his conduct, was employed as of the date of the PSR, has chosen to further his education while awaiting sentence, and retains the support of his girlfriend. Additionally, the firearms offense leading to the present charge did not result in injury to anyone, although the firearms were fully-loaded and Defendant was driving in a residential neighborhood at the time.

However, Defendant was in possession of not one, but two firearms, one of which was stolen, when the police encountered him on the date of the present violation. The Government feels that a custodial sentence is necessary to reflect the seriousness of Defendant's conduct, but also argues that the bottom of the sentencing range is appropriate as a just punishment. Under § 3553(a)(7), Defendant could be ordered to provide restitution to the owner of the stolen firearm found in his possession. However, the Government has not yet received information pertaining to that victim's losses.

Finally, Defendant's counsel requests that he be provided with medical care—mental health and substance abuse treatment—during custody, which is properly considered under 18 U.S.C. § 3553(a)(2)(E).

## V. CONCLUSION

The Court will impose a sentence in the range of 18–24 months imprisonment and one to three years supervised release. Defendant has requested and the Court will include a recommendation in the Judgment Order for

designation at Milan, so that he may be closer to his family. Additionally, Defendant requests and the Court will recommend that he receive substance abuse and mental health treatment while incarcerated.

IT IS SO ORDERED.


Dated: July 6, 2016                         s/Gershwin A. Drain
    Detroit, Michigan                    GERSHWIN A. DRAIN
                                     United States District Judge


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on **<u>July 6, 2016.</u>**

                                            s/Tanya R. Bankston
                                            TANYA R.BANKSTON
                                            Case Manager & Deputy Clerk